EGERTON, J.
*826 *404 Michael Molinaro appeals from a restraining order issued under the Domestic Violence Prevention Act (DVPA) ( Fam. Code, § 6200 et seq. ).[1] We conclude the part of the restraining order prohibiting Michael from posting anything about his divorce case on Facebook constitutes an overbroad, invalid restraint on his freedom of speech. We therefore will reverse that provision and direct the trial court to strike it from the restraining order. We affirm the restraining order in all other respects.[2]
FACTS AND PROCEDURAL BACKGROUND
On July 11, 2016, Bertha Molinaro filed a petition for dissolution of her marriage to her husband Michael, citing "irreconcilable differences." The Molinaros had been married since June 1997.
On January 6, 2017, Bertha filed an ex parte application for a domestic violence restraining order using the prescribed Judicial Council Form DV-100.
*827 In a supporting declaration, Bertha asserted the following: On January 1, 2017, Bertha began to move out of the family home with the help of her siblings and other family. After a verbal altercation with Bertha and some of the family members, Michael moved his car to block the moving truck from exiting the home's driveway. Bertha called the police, who eventually detained Michael. Later that day, she removed the rest of her belongings from the house. Michael had physically restricted Bertha from leaving the home on two other occasions-once by blocking the front door and another time by blocking her car in the home's carport. Before filing for divorce, Bertha had installed locks on her bedroom door "because [Michael] was acting erratic and [she] was afraid of him." Michael threatened to "throw a chair though the bedroom window" if she did not remove the locks.
Bertha declared she was "afraid of what Michael might do in retaliation for my moving out." She continued, "I wanted to keep my address confidential but he found out where I moved to and he is now posting on social media derogatory comments about me and he posted a picture of my new residence and he included the address. He is angry at me for moving out and I am afraid for my safety and the safety of my children."
The application requested a domestic violence restraining order (and a temporary restraining order in advance of a hearing) commanding Michael to stay at least 100 yards away from Bertha and their three children-their 18-year-old daughter and their two sons, then ages 17 and 13, respectively. She also asked the court to order Michael to attend a batterer intervention program. On a separate Form DV-105, Bertha requested legal and physical custody of the couple's two minor sons, and no visitation for Michael until the hearing.
*405 The court denied the request for a temporary restraining order and set a January 26, 2017 hearing to receive further evidence on the application. In denying the temporary restraining order, the court checked a box on Form DV-109 indicating: "The facts as stated in form DV-100 do not show reasonable proof of a past act or acts of abuse."
On January 26, 2017, Michael filed a request to continue the hearing. The parties appeared before Judge Thomas Trent Lewis the same day. Bertha did not oppose the request, but asked that Michael "please stop posting everything about the case on Facebook," and "stop giving the children all of my pleadings." Michael responded that he had only given the children copies of "the domestic violence restraining order, not of the divorce petition." When the court asked, "what makes it okay to give the 13-year-old and the 17-year-old copies of the court papers," Michael answered, "My best judgment, Your Honor."
*828 The court explained to Michael that it intended to "issue an order against you today that precludes you from discussing the matter with the 13-year-old and the 17-year-old," warning him that courts may "consider parents insinuating children into the court process" in making custody determinations. Michael objected to the order, arguing Bertha had "emptied [their] home equity of $ 250,000 [sic ]" and "relocated [his] children to a mystery house without informing [him]." The court acknowledged the objection, but asked Michael to confirm he understood the terms of the order. Michael responded, "Okay. I understand the what. I question the sanity." The court clarified the order did not preclude Michael from posting on Facebook, except to the extent those postings "would otherwise violate the no-discussion order."
On the parties' stipulation, the court continued the hearing to February 15, 2017. Judge Lewis's written order stated, "Neither party is to discuss any aspect of the case with the minor children until further order of the court-including Facebook postings [about the] subject case matter."
On February 15, 2017, the parties appeared before Judge Amy M. Pellman. The court clerk swore both Bertha and Michael. Bertha testified Michael had "showed up uninvited to the house" where she and the couple's children were living, had posted on Facebook "about the divorce, about everything that's happening," and had sent police to the house "to do a wellness check on the kids" when she was at her teaching job. Bertha said Michael "posted to Facebook that [she] stole $ 250,000 from [their] home equity line, that [she] used it all and ran away with it." She continued, "He says that I'm crazy and having hallucinations." Bertha said Michael had concluded some emails to her and her attorney with "F.O.A.D." She looked the acronym up and it "stands for fuck off and die." Bertha testified she "wasn't sure" if the "F.O.A.D." comment was directed at her or her lawyer, but noted that Michael had called her "a bitch a few times." Bertha said Michael's "name calling" was "unsettling" and "very stressful." She also testified the couple's sons were "both depressed" and their daughter "was particularly upset because she had to go back to the house to visit her dogs and [Michael] ... threatened to euthanize the dogs."
Bertha testified she "fear[ed] for her safety and [Michael's] conduct [was] just getting worse and worse." She said Michael's behavior toward her at the earlier hearing was "threatening." She repeated, *406 "I fear for my safety and that of my children."[3] *829 Michael declined the court's invitation to cross-examine Bertha, and said he would not testify on his own behalf. The court asked if Michael planned to call any witnesses. He responded, "I'd like to call my children." The court denied the request, stating, "I don't need to hear" from the children. Although Michael suggested that Judge Lewis had made a "previous court order that [the children] attend," he made no offer of proof regarding the relevance of their testimony. When Judge Pellman responded that she was not bound by the "previous court," which had not had the benefit of Bertha's testimony, Michael acknowledged the ruling and responded, "Quite sure. No evidence."[4]
The court granted Bertha's application for a restraining order, stating the order would be for three years and Michael was to stay 100 yards away from Bertha and the three children. The court also ordered Michael not "to post anything on Facebook ... in regards to this action" and "not to contact the mother or the children regarding this action."
The court asked Michael if he understood the order. Michael responded, "No, I don't. I think you're insane. I don't understand a word you are saying. It lacks reason, Your Honor. There was no evidentiary foundation for your order. And the prior order of court dated January 6, 2017, that said the facts as stated do not show reasonable proof of past act or acts of abuse was the correct order." The court acknowledged Michael's objection, and asked the parties what they requested regarding custody and visitation of the minor children.
Bertha's counsel asked to arrange "reasonable visitation with the kids." She suggested the parties go down to the mediation office to "work out the parenting plan for the kids." The court suggested mediation might not be *830 productive at the moment, in view of Michael's "behavior." Michael interrupted the court, demanding to know "[w]hat behavior." The bailiff asked Michael not to "scream," and the court *407 noted Michael had been "[y]elling in court."
The court ordered Michael would have monitored visits with the children in "a neutral setting." Michael asked that the visits take place at the children's residence. The court denied the request, admonishing Michael that he was to stay 100 yards away from the residence. The court also ordered that he was to work with Bertha's counsel to find a professional monitor. Michael responded, "No, I'm not." The court granted legal and physical custody to Bertha.
At Bertha's request, the court also ordered Michael to attend anger management classes. Michael responded, "On what basis? There's been no abuse, Your Honor."[5] The court explained it was ordering anger management, not a 52-week batterer's intervention program. Michael continued to respond indignantly: He told the judge, "Why don't you put me behind bars[?]"; asked, "How fast can I commit contempt of court by going to none of them, Your Honor?"; and told the court, "I have no respect for the court, Your Honor."
On February 15, 2017, the court entered the restraining order and child custody and visitation order. The order listed the couple's three children as "additional protected persons," provided for an expiration date in three years, included no-contact and stay-away orders, and ordered Michael to attend anger management classes once a week for six months. In an attachment to the restraining order, the court ordered the parties "not to post anything about the case on Facebook" and "not to discuss the case with the children."
On March 10, 2017, Michael filed a motion for a new trial "and/or to vacate judgment/order dated February 15, 2017." Among other things, Michael argued the court committed "misconduct" by precluding him from calling his children as witnesses; there was no evidence of "abuse" to support the restraining order; the order was the product of unfair "surprise" because the parties had not conducted a mandatory mediation on child custody; and the order was "based on written conduct" that was constitutionally protected free speech. On March 30, 2017, the court denied Michael's new trial motion, finding "no legal basis for granting the motion."
*831 Michael timely appealed from the February 15, 2017 domestic violence restraining order.[6]
DISCUSSION
*408 1.-2.**
3. The Restraining Order Is Overbroad to the Extent It Prohibits Michael from Posting on Facebook
Although we have found the evidence sufficient to support the court's issuance of a domestic violence restraining order, we conclude the part of the order prohibiting Michael from posting "anything about the case on Facebook" is overbroad and impermissibly infringes upon his constitutionally protected right of free speech.[7]
"[P]rior restraints on speech ... are the most serious and the least tolerable infringement on First Amendment rights." ( Nebraska Press Ass'n v. Stuart (1976) 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 ( Nebraska Press ).) Orders enjoining the right to speak on a particular topic are disfavored and presumptively invalid. ( Id . at p. 558, 96 S.Ct. 2791.) However, courts have recognized a prior restraint may be permissible under certain limited circumstances. ( Aguilar v. Avis Rent A Car System, Inc. (1999) 21 Cal.4th 121, 143, 87 Cal.Rptr.2d 132, 980 P.2d 846 ( Aguilar ); see Hobbs v. County of Westchester (2d Cir. 2005) 397 F.3d 133, 149 ( Hobbs ).)
To establish a valid prior restraint under the federal Constitution, a proponent has the heavy burden to show the countervailing interest is *832 compelling, the prior restraint is necessary and would be effective in promoting this interest, and less extreme measures are unavailable. (See Hobbs, supra, 397 F.3d at p. 149 ; see also Nebraska Press, supra, 427 U.S. at pp. 562-568, 96 S.Ct. 2791.) A permissible order restraining future speech "must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." ( Carroll v. President & Com'rs of Princess Anne (1968) 393 U.S. 175, 183-184, 89 S.Ct. 347, 21 L.Ed.2d 325.)
The California Constitution is more protective of free speech rights than the federal Constitution, and California courts require "extraordinary circumstances" before a prior restraint may be imposed. ( Wilson v. Superior Court of Los Angeles County (1975) 13 Cal.3d 652, 658-661, 119 Cal.Rptr. 468, 532 P.2d 116 ; In re Marriage of Candiotti (1995) 34 Cal.App.4th 718, 724, 40 Cal.Rptr.2d 299 ( Candiotti ).) Nonetheless, in determining the validity of a prior restraint, California courts engage in an analysis of various factors similar to the federal constitutional analysis ( Aguilar, supra, 21 Cal.4th at pp. 145-146, 87 Cal.Rptr.2d 132, 980 P.2d 846 ), and injunctive relief restraining speech under the California Constitution may be permissible where the relief is necessary to "protect private rights" and further a "sufficiently strong public policy" ( id . at p. 167, 87 Cal.Rptr.2d 132, 980 P.2d 846 (conc. opn. of Werdegar, J.) ).
Applying these principles, the court in Candiotti held a custody order limiting a parent's right to communicate with third parties about matters related to the custody proceeding was an unconstitutional prior restraint. ( Candiotti, supra, 34 Cal.App.4th at pp. 724-726, 40 Cal.Rptr.2d 299.) There, the order prohibited a mother from disclosing negative information about *409 her former husband's new wife to anyone except certain specified professionals. ( Id . at p. 720, fn. 3, 40 Cal.Rptr.2d 299.) The Candiotti court recognized that courts "are given broad authority to supervise and promote the welfare of children" and may constitutionally order parents to refrain from disparaging their former spouse in front of their children. ( Id . at p. 725, 40 Cal.Rptr.2d 299.) However, the court observed the challenged order "went further, actually impinging on a parent's right to speak about another adult, outside the presence of the children." ( Ibid . ) The court held the order was overbroad in this respect and constituted an undue prior restraint of speech under the California Constitution, reasoning the order "would prevent [the mother] from talking privately to her family, friends, coworkers, or perfect strangers about her dissatisfaction with her children's living situation." ( Ibid. ) Although the trial court "certainly ha[d] the power to prevent [the mother] from undermining [the father's] parental relationship by alienating the children from [the stepmother]," the Candiotti court found the challenged order to be "much more far-reaching, aimed at conduct that might cause others, outside the immediate family, to think ill of [the stepmother]." ( Id. at p. 726, 40 Cal.Rptr.2d 299.) The court explained: "Such remarks by [the mother] may be rude or unkind. They may be motivated by hostility. To the extent they are *833 libelous, they may be actionable. But they are too attenuated from conduct directly affecting the children to support a prior restraint on [the mother's] constitutional right to utter them." ( Ibid . )
The same reasoning applies to the part of the restraining order prohibiting Michael from posting information about the case to Facebook. The record shows Michael's Facebook posts were not specifically directed to the minor children, but in many cases invited comments from Michael's adult friends and extended family, some of whom urged him not to dwell on the divorce, while others suggested he seek legal representation. Moreover, although the trial court plainly had the power to prohibit Michael from disparaging Bertha in the children's presence (see In re Marriage of Hartmann (2010) 185 Cal.App.4th 1247, 1251, 111 Cal.Rptr.3d 242 ), the order here, like the order in Candiotti , was "much more far-reaching," proscribing speech only peripherally related to the case and speech that might, at worst, "cause others, outside the immediate family, to think ill" of Bertha. (Candiotti, supra, 34 Cal.App.4th at p. 726, 40 Cal.Rptr.2d 299.) Indeed, most of Michael's earlier posts were of this variety-they expressed his apparent despair about the divorce and his separation from the children, but did not directly disparage Bertha or openly seek to alienate her from the children. Posts of this sort are "too attenuated from conduct directly affecting the children to support a prior restraint on [Michael's] constitutional right to utter them." ( Ibid . )
"It is certainly in the best interests of any children of divorce that the adults in their lives act in a mature and courteous manner" ( Candiotti, supra, 34 Cal.App.4th at p. 726, 40 Cal.Rptr.2d 299 ); however, where a restraint on the freedom of speech is concerned, the restriction must be necessary and narrowly tailored to promoting those interests. The part of the restraining order prohibiting Michael from posting about the case on Facebook does not meet this test. We conclude it is overbroad, constituting an invalid prior restraint, and must be stricken from the domestic violence restraining order. ( Id. at pp. 724-726, 40 Cal.Rptr.2d 299.)
*410 4.-5.***
DISPOSITION
The part of the restraining order prohibiting Michael Molinaro from posting "anything about the case on Facebook" is reversed, and the trial court *834 is directed to strike the provision from the order. The restraining order is affirmed in all other respects. Each party will bear his and her own costs on appeal.
We concur:
LAVIN, Acting P.J.
DHANIDINA, J.

Statutory references are to the Family Code unless otherwise noted. For clarity, we will refer to the parties by their first names.

In his opening brief, Michael appeared to challenge a custody and visitation order issued concurrently with the domestic violence restraining order. However, at oral argument he acknowledged the interim order is not subject to our appellate jurisdiction.

Michael objected to several parts of Bertha's testimony, including a hearsay objection to their daughter's statement about Michael's threat to euthanize the dog. He also made a lay opinion objection to the testimony describing his behavior as "threatening." The court overruled the objections, and we find no error in the evidentiary rulings. The court properly admitted the daughter's out of court statement as circumstantial evidence of her state of mind-that is, why she was "upset" when she returned from visiting her dogs. (Evid. Code, § 1250, subd. (a)(1) ; see also People v. Frye (1985) 166 Cal.App.3d 941, 950, 213 Cal.Rptr. 319 ["Evidence of a declarant's statement is not hearsay if it relates facts other than declarant's state of mind and is offered to circumstantially prove the declarant's state of mind."].) As for Michael's lay opinion objection, the court properly received the testimony as evidence that Bertha felt threatened by Michael's conduct. (Evid. Code, § 800 ; People v. Farnam (2002) 28 Cal.4th 107, 153, 121 Cal.Rptr.2d 106, 47 P.3d 988 ["A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony."].)

Michael argues the trial court erred by barring the children's testimony; however, as discussed, the record shows he made no offer of proof, before the hearing he did not file and serve a witness list with a brief description of the anticipated testimony (see § 217, subd. (c) ), and, on appeal, he has made no attempt to show how he was prejudiced by the exclusion of the testimony. He has forfeited the issue as a basis for appellate relief. (See Citizens for Open Government v. City of Lodi (2012) 205 Cal.App.4th 296, 308, 140 Cal.Rptr.3d 459 ["appellant bears the burden to show it is reasonably probable he or she would have received a more favorable result at trial had the error not occurred"].)

The objection prompted another exchange in which the court and bailiff cautioned Michael against screaming or "raising [his] voice and yelling." When the bailiff, for a third time, admonished Michael not to scream, Michael responded by disparaging the "family law bar."

Bertha contends Michael is "appealing a non-appealable issue" and he "should have filed a writ" petition. Bertha is mistaken. The issuance of a restraining order is appealable as an order granting an injunction under Code of Civil Procedure section 904.1, subdivision (a)(6).
On December 18, 2017, Michael filed a motion to strike Bertha's respondent's brief and a request for sanctions, arguing the brief " 'unreasonably' " violated the California Rules of Court governing the form and content of appellate briefs. We originally deferred ruling on the motion until we had had an opportunity to consider the merits of the appeal. We later vacated the order and denied the motion to strike. Michael then filed a renewed motion to strike and for sanctions, which we denied. To the extent there is any doubt about our ruling on the December 18, 2017 request for sanctions, that request for sanctions is also denied.

See footnote *, ante .

To the extent Michael purports to appeal a similar part of the January 26, 2017 order continuing the restraining order hearing, we conclude his challenge to the speech restriction is moot, having been superseded by the subsequent order that we address above.

See footnote *, ante .