Filed 8/27/20  Gary M. v. Crystal S. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GARY M., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CRYSTAL S., <br><br> Defendant and Appellant. | B301773 <br><br> (Los Angeles County Super. Ct. No. BD555480) |

APPEAL from an order of the Superior Court of Los Angeles County, Helen Zukin, Judge.  Affirmed.

Law Office of Michael C. Duggan and Michael C. Duggan for Defendant and Appellant.

Leigh Datzker for Plaintiff and Respondent.

_____

Crystal S. (Mother) appeals from an amended domestic violence restraining order and child custody and visitation order that, among other things, limit her interactions with her former husband, Gary M. (Father), his wife Leslie M., and Father and Mother's son (Son).[1]  Under the custody and visitation order, Mother may see Son twice a week with a professional monitor present.  Mother contends she was not provided adequate notice nor an opportunity to be heard prior to the family law court's issuance of these orders.  She also argues the orders violate her constitutional rights to free speech, association, a jury trial, and to be free from the imposition of cruel and unusual punishment.  We find no merit in these contentions and affirm the amended orders.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The February 25, 2019 Domestic Violence Restraining Order and Custody and Visitation Orders**

Son was born in 2009.  In 2013, Mother and Father entered into a stipulated judgment dissolving their marriage.  The appellate record does not include a copy of this judgment or any document relating to the parties' custody arrangements prior to February 25, 2019.

According to the family law court's docket, on or about December 18, 2018, Father filed an ex parte application seeking to change child custody and/or visitation.  Then, on or about

---

[1] We use first names and initials for the last names of parents to protect the personal privacy of Son, a child in a Family Code proceeding.  (Cal. Rules of Court, rule 8.90(b)(1), (11).)

January 31, 2019, Father sought a domestic violence restraining order.  Because the appellate record does not include Father's January 31, 2019 filing, we rely on the description in his appellate brief of his allegations:

"[Mother] had . . . posted statements on social media and had purchased a website, entitled, 'Gary[M.]fraud.com,' which alleged that both [Father] and his new wife Leslie had engaged in numerous criminal activities and had posted excerpts of [Father's] family law deposition on January 29, 2019.  [Father] further alleged that [Mother] has created a hostile environment to the point that the agreed to therapists and others could no longer work with [Mother] in the context of family therapy and that [Mother] had spoken to the minor child about the case and the proceedings on December 18, 2018.  [Father] also alleged that [Mother] was interfering with his receipt of school information and that she intentionally misinformed the school about [Father's] e-mail address in an attempt to circumvent his sole legal custody rights.  [Mother] was also aware that Judge Zukin and her predecessor, Judge Shelly Kaufman, had admonished her that if she discussed the case with the minor child, that such conduct was a major problem that would affect the current custody arrangements agreed to on December 18, 2018.  [Mother] also falsely told the minor child that [Father] was going to die of MS and that she was happy he was going to die."

On February 4, 2019, Mother filed a response to Father's request for restraining order, in which she argued she was not a danger to anyone and that Father was a criminal.  Son, through his counsel, also filed a responsive declaration, which is not included in the appellate record.

On February 25, 2019, following a hearing at which all parties were represented by counsel, the family law court issued a three-year domestic violence restraining order and a child custody and visitation order.  Under the restraining order, Mother must not, among other things, harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate, or block the movements of Father, Leslie, or Son.  She also may not contact them or obtain their addresses or locations.  Mother is also ordered to stay at least 100 feet away from Father, Leslie, and Son.  Mother may have brief and peaceful contact with Father and Son as required for court-ordered visitation.  The court also required Mother to attend a 52-week batterer intervention program.

The custody and visitation order awarded full legal and physical custody of Son to Father.  The family law court awarded Mother professionally-monitored visitation with Son on alternating Saturdays between 12:00 p.m. and 4:00 p.m. and every Tuesday between 3:00 p.m. and 7:00 p.m. at the Hollywood Police Department.  The family law court also enjoined Mother from "posting anything on the internet and/or anywhere else disparaging [Father] and/or Leslie [M.]," sending disparaging emails and/or making disparaging claims against them.  Mother was further ordered to remove any online posts about Father and Leslie.  According to the family law court's docket, the February 25, 2019 orders were served that same day.  Mother did not appeal from those orders.

**B.    August 1, 2019 Amended Domestic Violence Restraining Order and Custody and Visitation Orders**

According to the family law court's docket, on April 3, 2019, Mother filed a request for order (RFO) to "*end [the] restraining order*." Father filed a response on April 24, 2019. Neither Mother's RFO nor Father's response is included in the appellate record. On April 29, 2019, Mother also filed an "additional declaration" that attached several witness declarations in support of her April 3, 2019 RFO. In her additional declaration, Mother accused Father's counsel of misconduct, alleging, among other things, that counsel intended the "legal kidnapping of [Son]" and to harm Mother physically, mentally, and emotionally by checking the box on the February 25, 2019 restraining order requiring Mother to attend a 52-week batterer's program. Mother filed complaints against Father's attorney with the Los Angeles Police Department and with the California State Bar. Mother also argued that the family law court overlooked the rights of the biological grandparents, that Father's and the psychologist's claim that Son no longer had ADHD was a "complete fabrication," that Father was attempting to move Son to Puerto Rico, and that certain of Father's submissions to the family law court were fraudulent. Mother further argued that she did not approve of the professional monitor and attached negative online reviews of the monitor as an exhibit to her additional declaration.

On May 7, 2019, Father, Mother, their respective counsel, and Son's counsel appeared before the family law court for arguments concerning Mother's RFO and cross-requests to

modify the custody and visitation orders.[2]  As to Mother's RFO, her counsel argued the restraining order should be dismissed or modified to not limit Mother's access to Son.  The family law court ruled:  "The court is not going to go back through all the findings it made in the past that resulted in the restraining order being issued, only to say that at that time, the court looked at the totality of the circumstances, all of the facts presented, not just the postings, but the course of conduct on behalf of [Mother] . . . .  The court does see this request to terminate a restraining order issued in February as a motion for reconsideration, and on that basis, it is denied.  The fact [is] that the court did take a second look at the restraining order, at the evidence nonetheless and determined that even based on what was contained—what was submitted by [Mother] in the moving papers causes the court great concern over [Mother's] stability and awareness of why the restraining order was even issued or conscious of the behavior that both sides presented evidence on at the time of that hearing.  So the court is denying the request to terminate, denying the request to modify.  There are no new facts.  There are no—there is no new law presented to me today; however, on the issue of custody and the presumption, we're about to move into that hearing now."

 During argument on the custody and visitation order, Father's counsel described Son's positive progress at school, in

---

 **[2]** The family law court's docket lists three hearings for May 7, 2019:  "Request for Order re: Modification Hearing," "Request for Order re: Modification Hearing," and "Request for Order – Other . . . *End restraining order*."  On May 7, 2019, Son's counsel stated the hearings were for "cross-RFO's for custody" and Mother's "request to modify or vacate the restraining order."

therapy, with his doctors, and in other programs since the issuance of the February 25, 2019 orders.  In addition to arguing that depriving Mother of custody was unwarranted, Mother's counsel objected to the professional monitor, in part due to the cost.  The parties also stated that the times listed in the visitation order required modification because Son was still in school at 3:00 p.m. on Tuesdays, when the visitation period started, and because Son had swimming lessons every Saturday.  Further, Father requested Son be available to go with him on vacation beginning on June 11, 2019.  The parties also argued that the Hollywood police station was not a good location for visitation, but did not agree during the hearing to an alternative site.

Son's counsel argued against awarding custody to Mother.  She argued that under Family Code section 3044, a domestic violence restraining order creates a rebuttable presumption that awarding custody of Son to Mother would be detrimental to the best interests of Son.  Son's counsel further argued Mother failed to rebut that presumption:  "There's no evidence of any coparenting classes.  In fact, the testimony from [Mother] was that she had studied high conflict families, but there was nothing that was about her own behavior.  The lack of accountability that she set forth was troubling, not only in her testimony but also in the pleadings filed on April 3rd and the reply as well.  The blame of other people, placing blame [on Father], again renewing her request that I be removed and that the minor's therapist [be] removed. . . .  The police report against [Father's counsel] was concerning. . . .  There's no evidence of domestic violence classes of any kind.  Despite all of the many certificates that they provided this court, there was nothing regarding anger

7

management, nothing regarding domestic violence. . . . I believe the court was particularly concerned by [Mother's] inability to contain herself so many times before this court . . . . [T]here was a recommendation [that Mother] take anger management classes. That never happened. There was a recommendation and order in August of last year for the parties to attend coparenting counseling because of the severe conflict that exists between these people. The level of conflict has led to such acts as has been testified, where [Mother] told the child that his father was going to die[,] . . . that he was born of a surrogate[,] . . . [and Mother] calls [Father] a homosexual . . . ."

The family law court ruled that Mother did not rebut the Family Code section 3044 presumption. Further, the court expressed extreme concern for Son as a result of Mother's "continued course of conduct of attempting to threaten in one form or another, almost everyone in [Son's] orbit and life." The court noted Mother did not engage in the ordered anger management or batterer's intervention program, nor did she acknowledge her behavior is detrimental to Son. The family law court reiterated that the domestic violence restraining order was based upon the totality of the circumstances. Further, "[t]he court finds that [Mother] has engaged in a continued course of undermining [Father's] parenting, undermining [Son's] relationship with [Father], and making it impossible to coparent by a series of decisions that [Mother] has made over and over again. The court finds that [Mother] has infused [Son] into the center of this high-conflict relationship with [Father] and into this litigation by discussing the litigation, . . . telling [Son] that next time [Mother] was going to win[,] . . . tell[ing] [Son] that his father was going to die . . . . [T]he court finds that—already

8

found there was harassment of [Father], but the form of that harassment directly harms [Son]. . . . Every time there is an attack on his school, his therapist, his counsel—it just seems to be a series of conduct, so if the court had seen that [Mother] was showing some insight, some understanding that some changes needed to be made, the court may have found differently . . . . So at this time, the court, based on everything that was said, does not find it in [Son's] best interest for [Mother] to have custody, awards sole legal and physical custody to [F]ather for the time being. It is this court's hope that this will be for a short period of time. Mother[,] . . . you are ordered once again to take the anger management class that you were already ordered to do. You are ordered to take— . . . I am going to modify, pursuant to minor's counsel's suggestion. You're ordered to engage in treatment therapy, individual therapy, designed to discuss issues relating to coparenting, high conflict, and [Father], you are ordered to do the same."

The family law court also found the services of a professional monitor were still required, that the visits be modified to Tuesdays from 4:00 to 7:00 p.m. and every Saturday from 1:00 to 7:00 p.m., that Son be available to go on vacation with Father on June 11, 2019, that Mother attempt to schedule a professional monitor for Mother's Day so she could see Son on that day, and that the parties meet and confer concerning Son's summer schedule. The court stated that "[i]f the monitor has no negative comments in reports over a period of time, Mother can come back, but not next week, not next month. This has to be over a period of time." The court further ordered that Mother share the costs for the professional monitor equally with Father,

9

denied sanctions against Mother, and ordered Father's counsel to prepare the order.

The docket reflects that on July 7 and July 24, 2019, Mother filed ex parte applications for changes in custody and visitation, respectively. Neither of these applications nor any responsive documents are included in the appellate record.

On August 1, 2019, the court issued the amended restraining order and custody and visitation order that are the subject of this appeal. The amended orders differed from the February 25, 2019 orders in a few respects. Specifically, the family law court made only two changes to the amended restraining order. First, the amended restraining order listed the hearing date as May 7, 2019. Second, the amended restraining order checked boxes at item 26, "Criminal Protective Order," that "[n]o information has been provided to the judge about a criminal protective order." The court did not change the expiration date of the restraining order, which remained February 25, 2022.

As to the custody and visitation order, Mother was provided with more visitation than she had under the February 25, 2019 order. She was awarded visitation every Saturday from 1:00 to 7:00 p.m. and every Tuesday from 4:00 to 7:00 p.m.; the parties were ordered to meet and confer concerning a summer visitation schedule; Mother was not to have visitation on June 11, 2019; but Mother was scheduled to have visitation on Mother's Day. Additionally, the location for visitation remained the Hollywood Police Department, but the visitation order noted this was "unless otherwise agreed to in writing by [the] parties and counsel." Mother and Father were also ordered to split the costs of the professional monitor equally.

Mother was served with a copy of the amended restraining order on September 16, 2019. Mother timely filed this appeal as to the August 1, 2019 amended orders.

## DISCUSSION

### A.  Appellant's Duty to Provide an Adequate Record and Recitation of Facts

As a preliminary matter, we address an appellant's duty to provide this court with an adequate record and recitation of facts. "[I]t is a fundamental principle of appellate procedure that a trial court judgment [or order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' [Citation.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A

11

judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"].)

Further, an appellant challenging the sufficiency of evidence to support an order must summarize both favorable and unfavorable evidence. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.) She cannot shift this burden to the respondent or to the appellate court. (*Ibid*.) An appellant's one-sided recitation of facts risks forfeiture of her claims. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Here, Mother has provided only a one-sided version of the facts in her briefs. Further, while she included the restraining orders, custody orders, and her filings, she has not included other relevant documents in the appellate record, including Father's or Son's filings relating to the domestic violence restraining orders or custody orders. Accordingly, in certain instances described below, we resolve any ambiguity in favor of affirming the court's orders. (See *Jameson v. Desta, supra*, 5 Cal.5th at pp. 608-609.)

## B. Mother Received Notice and Opportunity to Be Heard

Mother argues she was denied due process because she was not provided with notice of the hearing relating to the amended orders or an opportunity to be heard. This argument is without merit.

Even a cursory review of the record establishes that the May 7, 2019 hearing gave rise to the amended orders. The amended restraining order expressly identifies the hearing date as May 7, 2019. Also, a review of the May 7, 2019 reporter's transcript reveals that each change reflected in the amended custody and visitation order was discussed and orally ruled upon

12

at that hearing.[3]  Further, two May 7, 2019 minute orders list the changes to the custody orders.[4]  The only change in the amended orders that was not discussed at the May 7, 2019 hearing was the two boxes checked at item 26 relating to a criminal protective order, which we discuss further below.

Mother was provided with an opportunity to be heard at the May 7, 2019 hearing.  Two separate counsel accompanied Mother and argued extensively on Mother's behalf.  At the conclusion of each of Mother's counsel's arguments, the family law court asked whether there was anything further, and counsel responded in the negative.

Mother's contention that she was not able to present witnesses or evidence is also without merit.  At the May 7, 2019 hearing, the family law court referred to an earlier evidentiary hearing at which each side rested.  Still, following some discussion as to whether witnesses were present in the courtroom, the family law court inquired of Mother's counsel, "[C]ounsel for respondent, do you have witnesses you plan to—," and Mother's counsel responded, "No, your honor.  No, your honor."  Later in the hearing, the court again asked, "[A]s I understand it, where we left off was both sides are rested; correct?"  Mother's counsel responded, "That's correct, your honor."  The court then asked, "On the issue of custody and parenting time, but I don't recall hearing argument or

---

[3] Mother complains that the family law court canceled her visitation with her son on June 11, 2019, to allow Father to take Son on vacation.  We find the family law court acted within its discretion in making this order.

[4] The appellate court independently obtained these minute orders.

recommendations from any counsel. Is that where you agree that's where we stand?" Mother's counsel, replied, "Yes, your honor." Thus, Mother waived any further evidentiary hearing. Additionally, the record does not demonstrate that Mother could not submit declarations or other documentary evidence in support of her request to modify or terminate the February 25, 2019 orders. Indeed, she filed documentary evidence with her February 4, 2019 response and several declarations and documentary evidence with her additional declaration filed in support of her RFO.[5]

Mother next argues the family law court violated due process in designating the domestic violence restraining order as a criminal order without providing her notice and an opportunity to be heard. However, Mother's argument that the court designated the restraining order as criminal is not supported by the record. Form DV-130, Domestic Violence Restraining Order After Hearing, item 26 is titled "Criminal Protective Order" and provides three choices that the court may select: "a. Form CR-160, *Criminal Protective Order – Domestic Violence*, is in effect"; "b. Other Criminal Protective Order in effect (*specify*)"; and "c. No information has been provided to the judge about a criminal protective order." Both options a. and b. provide spaces for the court to write in the case number, county, and expiration date relating to the criminal protective order. Here, the family law court selected option "c." In other words, to the court's knowledge, there is no criminal protective order against Mother,

---

[5] Of course, ordinarily, new evidence is not permitted with reply papers. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537.)

and Mother has not demonstrated that this selection means anything else.  At oral argument, Mother's counsel conceded he was "not sure what [item 26] means," but argued that the selection *could be* interpreted to mean the court was designating the domestic violence restraining order to be a criminal protective order.  We find this interpretation unlikely in light of the language of options a. through c., including that space is provided for the court to state the case number, county and expiration date of the criminal protective order, thereby evidencing the criminal protective order is separate from the domestic violence restraining order.  Accordingly, Mother has not demonstrated that the family law court's selection of item 26.c. warrants reversal.

Mother also contends "that if she had actually been 'heard[,'] the merits of her case would have prevailed."  To the extent this statement is intended to suggest that sufficient evidence did not support the August 1, 2019 orders, this argument is not fully developed and, therefore, is waived.  (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [" 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived' "].)

Further, because Mother failed to provide an adequate appellate record that includes, for example, the reporter's transcript of the evidentiary hearing or Father's or Son's filings relating to the restraining and custody/visitation orders, we conclude Mother has defaulted as to any argument that the family law court's orders were not supported by sufficient evidence.  (*Jameson v. Desta, supra*, 5 Cal.5th at pp. 608-609.)

15

**C.  Mother Has Not Demonstrated the Family Law Court's Restraining Order Amounted to an Unconstitutional Prior Restraint of Mother's Free Speech**

Mother argues the form DV-140 "other orders" portion of the restraining order is overbroad and an unconstitutional prior restraint on her right to free speech.  These "other orders" were issued with both the February 25, 2019 and the August 1, 2019 restraining orders and provide:  "1.  Respondent is hereby enjoined and restrained forthwith from posting anything on the internet and/or anywhere else disparaging [Father] and/or Leslie [M.].  [¶]  2.  Respondent is hereby enjoined and restrained forthwith from sending disparaging emails and/or making disparaging claims against [Father] and/or Leslie [M.].  [¶] 3.  Respondent is ordered to immediately remove any on-line posts about [Father] and/or Leslie [M.] from Face[b]ook, YouTube, or anywhere else on-line concerning [Father] and/or Leslie [M.] which Respondent and/or her agents or representatives posted on-line.  [¶]  4.  Respondent shall not record or videotape the visitation exchanges."

The right to free speech is not absolute (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1427) and may be abridged in favor of a countervailing compelling interest (see *Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824, 831-832).  Thus, in family law proceedings, courts have restricted speech to promote the bests interests of the children.  (See *In re Marriage of Hartmann* (2010) 185 Cal.App.4th 1247, 1251; *In re Marriage of Candiotti* (1995) 34 Cal.App.4th 718, 725-726.)  For example, "[p]arents are routinely ordered not to make disparaging comments about the other parent to the children or in their

16

presence" (*In re Marriage of Candiotti*, *supra*, at p. 725, fn. omitted) or are restrained "from discussing their dissolution case (especially custody/visitation issues) in front of the children." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2020) ¶ 5:71.1.)

Of course, an order affecting First Amendment rights " ' "must be tailored as precisely as possible to the exact needs of the case." ' " (*In re Marriage of Evilsizor & Sweeney*, *supra*, 237 Cal.App.4th at pp. 1430-1431.) Accordingly, some courts have held that orders enjoining a parent's speech and the dissemination of independently-acquired information outside the immediate family are "too attenuated from conduct directly affecting the children to support a prior restraint" on speech. (*In re Marriage of Candiotti*, *supra*, 34 Cal.App.4th at p. 726.) For example, in *Molinaro v. Molinaro*, *supra*, 33 Cal.App.5th at p. 826, the Court of Appeal reversed a portion of a domestic violence restraining order that prohibited a husband "from posting anything about his divorce case on Facebook." The "Facebook posts were not specifically directed to the minor children, but in many cases invited comments from [the husband's] adult friends and extended family." (*Id.* at p. 833.) The appellate court found that "although the trial court plainly had the power to prohibit [the husband] from disparaging [the wife] in the children's presence [citation], the order here . . . was 'much more far-reaching,' proscribing speech only peripherally related to the case and speech that might, at worst, 'cause others, outside the immediate family, to think ill' of [the wife]." (*Ibid*.)

However, other appellate courts have found that restraining speech "that has been determined after a hearing to constitute abuse is not the type of 'speech' afforded constitutional

17

protection." (*In re Marriage of Evilsizor & Sweeney*, *supra*, 237 Cal.App.4th at p. 1427; see also *Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1153 ["injunctive order prohibiting the repetition of expression that had been judicially determined to be unlawful did not constitute a prohibited prior restraint of speech"]; *Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853 [if First Amendment issue had been preserved for appeal, appellate court would conclude that order "to 'not post photographs, videos, or information about [respondent] to any internet site' and to 'remove the same from any internet site over which he has access or control' " was directed at conduct that constituted abuse and not protected by the First Amendment]; *Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 352 [an injunction "may 'deprive the enjoined parties of rights others enjoy precisely because the enjoined parties have abused those rights in the past' "].)[6]

While it initially appears that the first three "other orders" may be overbroad, the determination of whether there has been a constitutional violation will depend on the specific facts of this case.  The orders seem to relate directly to Mother's previous actions, including creating a website that alleges Father is a criminal, posting his deposition online, and posting on social media that Father committed crimes against her.  Mother's filings also suggest that then-9-year-old Son may have accessed these postings on the internet.  We simply do not have before us an adequate record from which we may determine whether

---

[6] Abuse under the Domestic Violence Protection Act includes disturbing the peace of the other party.  (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483.)

18

sufficient evidence supported a finding that such speech amounted to abuse and whether the "other orders" could have been more narrowly drawn while still protecting Father, his wife, and Son from abuse. Accordingly, we must follow the well-established principle that the family law court's order is presumed correct. (*Jameson v. Desta*, *supra*, 5 Cal.5th at pp. 608-609.)

**D. Mother Has Not Demonstrated the Family Law Court's Restraining Order Violated Her Right to Association**

In the questions presented portion of her opening brief, Mother asks whether "the terms of the Amended Restraining Order infringe unconstitutionally on Appellant's right to associate with her natural child and provide parenting?" However, Mother did not develop any legal argument on this issue and, thus, has waived it for purposes of appeal. (*Nelson v. Avondale Homeowners Assn.*, *supra*, 172 Cal.App.4th at p. 862.) Further, "[t]he principle of the best interests of the child is the sine qua non of the family law process governing custody disputes. 'Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.]' [Citation.]" (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 447-448.)

**E. Mother Does Not Have a Constitutional Right to a Jury Trial or to Be Free from Cruel and Unusual Punishment in Family Law Court Child Custody and Visitation Proceedings**

Mother contends the family law court's amended orders violate her constitutional rights to a jury trial and to be free from cruel and unusual punishment. Mother is wrong. "The right to a jury trial is not absolute. 'The right so guaranteed by the Constitution is that of the right as it existed at common law or in those cases triable by a jury as a matter of right under the common law.' [Citation.]" (*In re Marriage of Gagne* (1990) 225 Cal.App.3d 277, 289.) "Family law proceedings and other actions as to which a right to jury trial did not exist at common law do not fall under this constitutional provision." (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 951, fn. 2.) As to Mother's Eighth Amendment challenge, the cruel and unusual punishment clause prohibits the imposition of a penalty that is disproportionate to a criminal defendant's personal responsibility and moral guilt. Mother does not cite to and we have not found any authority extending the Eighth Amendment to child custody and visitation orders.

**F. Any Error in Service of the Restraining Orders Was Harmless and Does Not Warrant Remand**

Mother contends she was not personally served with a copy of (1) the original petition for the temporary restraining order; (2) the temporary restraining order; (3) "the petition for the first Amendment of the Restraining Order of February 25, 2019 and when it was signed," which she received by mail; (4) "the petition for the Amended Restraining Order (note a proper petition was never filed and there was no hearing)"; and (5) the signed

20

amended restraining order, "as required by Family Code section 243."  Even if objections to the manner and timeliness of service of items (1) through (2) were appealable, the time for appeal has long since lapsed because these orders were issued prior to February 25, 2019.  As to items (3) through (5), Mother has not demonstrated these items could not be served by mail, nor has she shown any prejudicial error.  By its plain terms, Family Code section 243 applies only to temporary restraining orders:  "If a petition under this part [Part 4. Ex Parte Temporary Restraining Orders] has been filed, the respondent shall be personally served with a copy of the petition, the temporary restraining order, if any, and the notice of hearing on the petition. . . ."  (*Id.*, subd. (a).)  We note that form DV-250, Proof of Service By Mail, expressly prohibits certain forms from being served by mail, but not the forms at issue in this appeal, which include DV-130 (Restraining Order After Hearing), DV-140 (Child Custody and Visitation Order), and DV-150 (Supervised Visitation and Exchange Order).  In fact, form DV-250 expressly lists form DV-130 as a document that may be served by mail.

Finally, the appellate record demonstrates Mother was present with counsel at the May 7, 2019 hearing, and that she had ample opportunity to file pleadings and evidence prior to the hearing.

21

## DISPOSITION

The August 1, 2019 amended orders are affirmed.

Respondent is to recover his costs on appeal.

NOT TO BE PUBLISHED


SINANIAN, J.*


We concur:


CHANEY, J.


BENDIX, Acting P. J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.